Filed 7/27/26  P. v. Aguayo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E087183 |
| v. | (Super.Ct.No. RIF2402334) |
| JESUS IGNACIO AGUAYO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Anthony R. Villalobos, Judge.  Affirmed.

Law Offices of David R. Greifinger, and David R. Greifinger, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

# I.

## INTRODUCTION

Following a jury trial, defendant and appellant Jesus Ignacio Aguayo was convicted of carjacking (Pen. Code,[1] § 215, subd. (a)), and misdemeanor theft (§ 488). In a bifurcated proceeding, defendant admitted that he had suffered two prior strike convictions (§§ 667, subd. (c) & (e)(2)(A), 1170.12, subd. (c)(2)), and the trial court found true the aggravating factor that defendant had served a prior prison term (Cal. Rules of Court, rule 4.421(b)(3)). After the trial court struck one of defendant's two prior strike convictions under *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, the court sentenced defendant to 10 years in state prison for the carjacking conviction and 180 days in county jail for the misdemeanor theft conviction, to run concurrently with the 10-year sentence. The court awarded defendant 471 days credit for actual days served and 70 days of conduct credits, for a total of 541 days credit for time served.

Defendant appeals from the judgment. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), requesting this court to conduct an independent review of the record. In addition, defendant has had an opportunity to file a supplemental brief with this court and has not done so. Based on our independent review of the record and finding no arguable errors that would result in a disposition more favorable to defendant, we will affirm the judgment.

---

[1] Unless otherwise stated, all future statutory references are to the Penal Code.

## FACTUAL BACKGROUND

In October 2023, Octavia Malone was living out of her car in Moreno Valley and getting her food primarily from the Salvation Army. She kept her belongings in the car.

In the morning on October 20, 2023, Malone went to the Salvation Army in Moreno Valley to get a hot meal. She had parked her car about 50 feet away. As she walked toward the food line, she saw defendant passed out, lying on the ground. Malone walked up to defendant, whom she had seen around town a couple of times, to see if he was okay.

Malone coaxed defendant to walk with her to the Salvation Army to get something to eat. At first, defendant was "kind of out of it" then about five minutes later became "really combative and started yelling" while in line. Defendant was yelling that he was missing several items, including a bike, a tablet, and a cell phone, and left the line before obtaining any food. Malone followed defendant toward her car to see if he was okay. When she approached her vehicle, Malone noticed that her purse and backpack, which had been sitting visible on the passenger seat, were missing. Malone suspected that defendant had taken her items and started searching for him in her vehicle.

About 10 minutes later, Malone found defendant, his girlfriend, and Joshua Zitter outside a restaurant. Malone parked her car in the middle of the street, put it in park, but did not turn off the ignition, leaving the door open. Malone noticed defendant and his girlfriend dumping the contents of the purse and backpack on the ground. Malone was

3

upset and yelling. She approached defendant and asked him why he had taken her possessions. Defendant was agitated and said from about 15 to 20 feet away, " 'Well, I'm going to take your car next, bitch.' "

Defendant then walked rapidly towards Malone, who was initially standing at the passenger side of her car. As defendant walked toward Malone, she grabbed his arm when she was near the hood of the car to try to prevent him from taking her vehicle. Defendant jerked away from Malone, ran around the hood to the driver's side of the car, and got in. Malone reached into the car through the driver's side door and tried to turn the engine off and take the key out of the ignition. Defendant pushed Malone away, then punched her in the nose and forehead three or four times. He then got into the car and placed it in reverse while Malone hung onto the keys and steering wheel. After defendant pushed Malone away one final time and she fell on her back, defendant drove away in Malone's vehicle. Malone called 911 and described the incident to officers at the scene of the crime soon after it occurred.

Malone testified at the preliminary hearing and on cross-examination at trial that she had known defendant for a few months. She also testified that she did not have physical contact with defendant during the incident. Malone denied ever having an intimate relationship with defendant when squatting in a house in Riverside. Malone was convicted of second degree burglary in 2018 and of second degree robbery in 2017.

Zitter testified that he had known Malone as a friend for three years and that they belonged to the same group of friends and hung out in the same area. Zitter recognized

4

defendant as part of the group. On the day of the incident, defendant appeared at the back of the restaurant with his girlfriend. Defendant and his girlfriend had two backpacks, which they went through as if they had stolen them from somebody. Defendant and his girlfriend dumped the contents of the backpacks on the ground and kept some of it. They smashed the items they did not keep on the ground and threw some in a trashcan. Malone showed up a few minutes later, parked her car, and yelled at defendant and his girlfriend to return her stuff from about five feet away. The driver's side door of the vehicle was open. Defendant stopped rummaging through the backpacks and charged at Malone with a two-by-four about two feet long, that he had picked up from alongside a dumpster. Defendant got Malone away from the car and jumped in the driver's seat. Defendant then put the car in reverse while Malone was at the passenger side of the car. Malone ran around the hood of the car to the driver's side to try to prevent defendant from driving away. As defendant backed up, Malone held onto the interior of the window area of the driver's side door. Malone tugged at defendant's shirt and told him to stop. The struggle lasted a couple of seconds. Defendant put the car into drive and drove off as Malone held on, being dragged alongside the car as she held onto the window frame with her left hand. Malone continued to try to pull defendant out of the car with her right hand. Malone was dragged about five feet before she let go. Zitter did not recall any punching during the incident.

The defense attempted to discredit Zitter's testimony at trial with the use of his prior inconsistent statements. At the preliminary hearing, Zitter testified that Malone and

5

he were in the parking lot and that defendant joined them. He also testified that Malone, and not defendant, had the two-by-four. He stated that Malone had come to the restaurant parking lot, backed her car in, left her door open and hung out with him for 30 minutes. He further testified that at the time of the incident, he did not know defendant's name, had just seen him around, and that defendant came out from nowhere from the back of the restaurant and got in the car. Zitter also testified at the preliminary hearing that when Malone showed up at the restaurant, defendant was nowhere to be found and that he did not recall seeing any backpacks. Zitter changed his story at the preliminary hearing after the prosecution handed him a summary of Riverside County Sheriff Sergeant Christopher Loucks' written report.

During a videotaped interview with Sergeant Loucks about 30 to 45 minutes later at the scene of the incident, Zitter stated that defendant showed up at the back of the restaurant where his girlfriend was waiting for him. Defendant had two backpacks, which he dumped out. He kept some of the contents and smashed the rest. Malone pulled up in her car and yelled at him to give back her belongings. Defendant then picked up a two-by-four, and chased Malone when she got out of the driver's side of the car. Defendant jumped in the car and backed up while Malone held onto the car, being dragged across the parking lot. Just prior to the interview, Sergeant Vasquez had spoken to Malone. Zitter was present as Sergeant Vasquez interviewed Malone. Sergeant Vasquez summarized everything Malone had said in front of Malone and Zitter.

6

During cross-examination, a videotape refreshed Zitter's recollection that he was sitting next to Malone the entire time as she spoke to Sergeant Loucks and heard the summary of her statement. Zitter was convicted of felony witness intimidation in 2009 and first degree burglary in 2016 and 2024.

Sergeant Loucks responded to the carjacking call at around 12:18 p.m. and drove to the restaurant. Riverside County Sergeant Vasquez had arrived just prior to Sergeant Loucks. The restaurant was about 1,700 feet from the Salvation Army. Sergeant Loucks made contact with Malone and Zitter, and photographed Malone, who was upset and crying, and recorded an interview. Malone informed Sergeant Loucks that she was hanging on the front of the car when defendant backed it up and that she lost her grip and fell. Sergeant Loucks noticed black marks on Malone's forearm, abrasions on her left arm, and abrasions on the left side of her jawline. The abrasions on Malone's left arm were consistent with striking the asphalt. Sergeant Loucks thereafter broadcasted information about Malone's car to deputies in the area, but the vehicle was not located.

On cross-examination, Sergeant Loucks testified that Malone never told him that she had been punched in the face by defendant or that she had been pushed to the ground or that she had grabbed defendant or that she was tussling with defendant. Sergeant Loucks acknowledged that the blemishes on Malone and a bump on her chin were mentioned by Malone and Sergeant Loucks for the first time at trial and not at the preliminary hearing. He also admitted that Malone stated she did not recall seeing defendant with a two by four piece of wood at the time he interviewed her.

7

On October 21, 2023, at about 11:34 p.m., officers located Malone's car in an assigned parking stall at an apartment complex in Moreno Valley, between a mile and a half and two miles from the restaurant. The car appeared abandoned, with the windows broken out and the battery removed. The locking mechanism on the car door was damaged. Officers found nothing of evidentiary value inside the car.

III.

DISCUSSION

After defendant appealed, this court appointed counsel to represent him. Upon examination of the record, counsel has filed a brief under the authority of *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues of whether the trial court had a sua sponte duty to instruct the jury on attempted carjacking despite defendant's counsel's request that the instruction not be given, whether there was sufficient evidence of force or fear during the carjacking, and whether the court erred in admitting defendant's 2002 burglary conviction for impeachment if he testified.

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment. (*Wende*, *supra*, 25 Cal.3d at pp. 441-442;

8

*People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:


FIELDS
J.


MENETREZ
J.

9